Alhaji Isa Adegori AYENI, Appellant

v.

The STATE of Texas;  The City of Houston, Texas;  and The Transit Authority of Houston, Texas, Appellees.

No. 03–11–00604–CV.

Court of Appeals of Texas,
Austin.

Feb. 20, 2013.

Tina Lin, Jorge Romero, Matthew G. Wylie, Matthew G. Wylie, P.C., Houston, TX, for Appellant.

John C. Adams, Assistant Attorney General, Cristina M. Nahidi, Bankruptcy & Collections Division, Austin, TX, for Appellees.

Before Justices PURYEAR, PEMBERTON and HENSON.

## MEMORANDUM OPINION

BOB PEMBERTON, Justice.

This is an appeal from a final summary judgment in a sales tax deficiency case. We will affirm the judgment.

## BACKGROUND

Appellant Ayeni operated a convenience store out of his residence in Houston, Texas. The Comptroller conducted a sales-tax audit of Ayeni's business for the period covering January 1, 2004, through December 31, 2006. Ayeni acknowledges that he "did not keep a good record of his business documents,"[1] and in the absence of such records, the Comptroller resorted to estimating Ayeni's sales and tax liability from records of Ayeni's beer purchases obtained from certain of his vendors and industry sales averages.[2] Through these calculations, the Comptroller determined that Ayeni owed the appellee taxing authorities[3] approximately $48,000 in unpaid sales taxes for the audit period, penalties, and interest.

After Ayeni failed to pay the determination, the Comptroller issued a certificate of tax delinquency to the Attorney General's office for collection. The Attorney General subsequently sued Ayeni on appellees' behalf to recover the delinquent sales taxes, penalties, and interest as set forth in the Comptroller's certificate of deficiency, plus attorney's fees. Ayeni filed a general denial, later amended to a verified denial. Appellees filed a traditional motion for summary judgment on all of their claims, attaching as evidence the Comptroller's certificate and an affidavit from appellees' counsel averring that they had incurred $7,500 in attorney's fees in the proceeding. Ayeni filed a response to appellees' motion and a supplement, presenting affidavits

---

1. Cf. Tex. Tax Code Ann. § 151.025 (West 2012) (requiring taxpayers to maintain certain records, including records of gross receipts, purchases, sales tax received or collected on each sale); 34 Tex. Admin. Code § 3.281(b) (2012) (Comptroller of Public Accounts, Records Required, Information Required) (2012) (same); see also Smith v. State, 418 S.W.2d 893, 895–96 (Tex.Civ.App.-Austin 1967, no writ) (holding that Comptroller may develop system to estimate taxes if taxpayer fails to keep required records).

2. See Tex. Tax Code Ann. § 111.008(a) (West 2008) ("If the comptroller is not satisfied with a tax report or the amount of the tax required to be paid to the state by a person, the comptroller may compute and determine the amount of tax to be paid from information contained in the report or from any other information available to the comptroller."); 34 Tex. Admin. Code § 3.281(c) (allowing Comptroller to, among other things, estimate tax liability based on any available information if taxpayer fails to keep required records); Alon USA, LP v. State, 222 S.W.3d 19, 32 (Tex.App.-Austin 2005, pet. denied) (noting that comptroller is expressly authorized to determine taxes on the basis of any information within comptroller's possession if taxpayer fails to keep proper records).

3. The State of Texas, the City of Houston, Texas, and the Transit Authority of Houston, Texas.

from himself and his bookkeeper in which each disputed the accuracy of the Comptroller's tax calculations and underlying estimates of Ayeni's beer sales. In further support, Ayeni attached numerous receipts that purported to reflect actual beer purchases by Ayeni. Ayeni also presented an affidavit from his counsel attempting to controvert appellees' attorney's fees affidavit.

Following a hearing, the district court granted partial summary judgment that Ayeni was liable for the deficiency in the certified amount. However, it denied appellees' motion on their claim for attorney's fees.

Ayeni filed a motion to reconsider the partial summary judgment, attaching additional documents from the Comptroller reflecting the Comptroller's methodology in estimating the sales taxes Ayeni owed. Following a hearing, the district court denied the motion for reconsideration by written order. To ensure "a clear appellate record," the order further specified that the district court had ultimately considered the entirety of the evidence and arguments Ayeni had filed in the case in its summary-judgment ruling.

Subsequently, the district court signed a final judgment incorporating its earlier partial summary judgment and awarding appellees $2,000 in attorney's fees.[4] It is from this final judgment that Ayeni now appeals.

## ANALYSIS

Ayeni seeks reversal of the district court's judgment in four issues that claim error in the summary-judgment ruling. In his first two issues, Ayeni asserts that he presented summary-judgment evidence of his tax liability that controverted the Comptroller's certificate and raised a fact issue that precluded summary judgment for appellees. In his third issue, Ayeni insists that the district court erred or abused its discretion by granting partial summary judgment when appellees had instead sought a final summary judgment. In his fourth issue, Ayeni argues that the Comptroller's certificate of delinquency could not support summary judgment in appellees' favor in the face of Ayeni's verified denial.

### Standard of review

The standards of review for summary judgments are well established. We review the summary-judgment motion and response, if any, de novo to determine if the competent summary-judgment evidence included with those pleadings shows that there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). We take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *See Valence*, 164 S.W.3d at 661.

Where, as here, the movant relies on the "traditional" summary-judgment standard, the movant has the initial burden of demonstrating that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Assuming this burden is met, and only if it is, the burden shifts to the non-movant to present evidence raising a genuine issue of material fact as to the movant's claims. *See id.* If the non-movant's evidence raises a fact issue, summary judgment is not appropriate. *See id.*

---

4. Although the Hon. Scott H. Jenkins signed the final judgment, the Hon. Tim Sulak made the summary-judgment rulings.

### Verified denial

■ We begin with Ayeni's fourth issue because it logically precedes the others—it amounts to a challenge to whether appellees' summary-judgment proof was sufficient to meet their initial burden of showing the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See id.* To meet their burden as to Ayeni's sales tax liability, appellees relied solely on the Comptroller's certificate of delinquency. As Ayeni acknowledges, subsection (a) of tax code section 111.013 makes the Comptroller's certificate—

... prima facie evidence of:

(1) the stated tax or amount of the tax, after all just and lawful offsets, payments, and credits have been allowed;

(2) the stated amount of penalties and interest;

(3) the delinquency of the amounts; and

(4) the compliance of the comptroller with the applicable provisions of this code in computing and determining the amount due.

Tex. Tax Code Ann. § 111.013(a) (West 2008). Consequently, it is well established that a Comptroller's certificate of delinquency suffices to meet a taxing authority's initial summary-judgment burden in a sales-tax deficiency suit, shifting the burden to the taxpayer to raise a fact issue in order to avoid summary judgment. *See N.S. Sportswear, Inc. v. State,* 819 S.W.2d 230, 232 (Tex.App.-Austin 1991, no writ) ("If unrebutted, [Comptroller's certificates of deficiency] are sufficient to establish, as a matter of law, the amount of tax the taxpayer owes." (citing *Baker v. Bullock,* 529 S.W.2d 279, 281 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.))). But Ayeni argues that his verified denial of appellee's claims served to rebut or join issue with the Comptroller's certificate, such that its prima facie or presumptive validity effectively disappeared, returning appellees to their status quo ante—and leaving appellees lacking in any summary-judgment proof to meet their initial burden. We disagree that Ayeni's verified denial had this effect.

Ayeni emphasizes subsection (b) of tax code section 111.013, which states:

The defendant may not deny a claim for taxes, penalties, or interest unless the defendant timely files a sworn written denial that specifically identifies the taxes, penalties, and interest the defendant asserts are not due and the amounts of tax, penalties, and interest that are not due.

Tex. Tax Code Ann. § 111.013(b). Ayeni suggests that subsection (b), read together with subsection (a)'s provisions describing the prima facie effect of the Comptroller's certificate, means that the filing of a verified denial under subsection (b) rebuts or negates the prime facie effect of a Comptroller's certificate under subsection (a), much like a verified denial in a suit on sworn account. *See* Tex.R. Civ. P. 185; *Rizk v. Financial Guardian Ins. Agency, Inc.,* 584 S.W.2d 860, 862 (Tex.1979) ("It is settled ... that a defendant's verified denial of the correctness of a plaintiff's sworn account in the form required by Rule 185 destroys the evidentiary effect of the itemized account attached to the petition and forces the plaintiff to put on proof of his claim."). However, unlike the rules governing suits on sworn accounts, nothing in section 111.013 says that subsection (b)'s verified denial has any impact on the operation and effect of subsection (a)'s Comptroller's certificate. *Cf.* Tex.R. Civ. P. 185 (providing affidavit on sworn account is "prima facie evidence [of the account], unless the party resisting such claim shall file a written denial, under oath"). Nor can Ayeni point to any Texas court that has said it does.

Neither subsection (a) or (b) references the other, and we can only conclude that both provisions must be given the effect the Legislature prescribes within each. Subsection (b) is in the nature of a pleading requirement with which defendants in sales-tax deficiency cases must comply in order to join issue with the taxing authority's petition; otherwise, the taxpayer loses by default. *See Noorani Gas & Convenience, Inc. v. State,* No. 03–06–00463–CV, 2008 WL 1827605, at *5 (Tex.App.-Austin Apr. 24, 2008, no pet) (mem. op.). In contrast, subsection (a) speaks to the evidence on which the taxing authority may rely to meet its burden of proof if and when its pleadings are placed at issue by a verified denial. And the Legislature in subsection (a) has made Comptroller's certificates of deficiency prima facie evidence without preconditions. *See* Tex. Tax Code Ann. § 111.013(a). Accordingly, Ayeni's verified denial does not affect the prima facie evidentiary nature of the Comptroller's certificate of deficiency in this case. We overrule Ayeni's fourth issue on appeal.

**Controverting proof**

Because appellees attached the Comptroller's certificate of deficiency to their summary-judgment motion and it is sufficient to meet their initial summary-judgment burden, the burden shifted to Ayeni to raise a question of fact as to the amount of taxes, penalties, and interest he owed for the audit period at issue or as to the Comptroller's compliance with the applicable provisions of the tax code in computing and determining the amount due. *See id.; N.S. Sportswear, Inc.,* 819 S.W.2d at 232. Appellees have urged that Ayeni had to do more than present the legally sufficient contrary evidence that is ordinarily required on summary judgment. In their view, Ayeni was required to adduce *conclusive* contrary evidence—i.e., prove as a matter of law that he did not owe the amount the Comptroller certified—in or-

der to preclude summary judgment based on the certification. In his second issue, Ayeni disputes appellees' view of his summary-judgment burden, urging that he was required to present only summary-judgment evidence sufficient to raise a genuine issue of material fact regarding his tax liability, not conclusive evidence. In his first issue, Ayeni argues that his summary-judgment proof is sufficient to raise a fact issue and even rises to the level of conclusive contrary evidence.

We need not address Ayeni's second issue because we conclude that he has not presented competent evidence sufficient to raise a fact issue even under the customary summary-judgment burdens. In an attempt to raise a fact issue, Ayeni submitted his and his bookkeeper's affidavits, sales-tax returns for 2005, 2006, 2007, 2008, 2009, and the first quarter of 2010, and various receipts from beer vendors dated between 2004 and 2006. Ayeni's affidavit stated that he did not owe the taxes, penalties, and interest claimed by the Comptroller because those amounts were "based on incorrect taxable sale amounts." He then averred that the correct taxable sale amounts were set forth in the sales-tax returns attached to his summary-judgment response. Finally, Ayeni stated in his affidavit that the Comptroller incorrectly estimated his beer sales for the audit period and that his records showed that he made gross beer purchases of $8,827.11 in 2004, $5,681.99 in 2005, and $6,622.02 in 2006.

Similarly, Ayeni's bookkeeper testified in his affidavit that Ayeni did not owe the amounts established by the Comptroller's certificate of deficiency because those amounts were based on incorrect taxable sale amounts. The correct amount of taxes owed, the bookkeeper averred, were set forth in the attached sales-tax returns and vendor receipts, which returns the book-

keeper prepared in the regular course of Ayeni's business. Finally, Ayeni's bookkeeper reiterated Ayeni's contentions regarding the gross purchases of beer made by Ayeni in 2004, 2005, and 2006.

■ The affidavit testimony that the Comptroller's amounts are incorrect and that Ayeni's amounts are correct are bare conclusions unsupported by facts. These statements are thus incompetent summary-judgment evidence. To be competent summary-judgment evidence, an affidavit must contain specific factual bases, admissible in evidence, upon which its conclusions are based. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex.1984); *see* Tex.R. Civ. P. 166a(f) (affidavits "shall set forth such facts as would be admissible in evidence"). The same is true of affidavit assertions that the Comptroller's estimates of his beer sales are incorrect: Although Ayeni does offer that "his records showed" that he made gross beer purchases of $8,827.11 in 2004, $5,681.99 in 2005, and $6,622.02 in 2006" and he includes some of those purchase receipts, he does not assert that those were his **total** purchases of taxable items during that period or state with any specificity how the Comptroller's numbers were incorrect. More important, Ayeni's affidavits do not state what Ayeni's total sales amounts were for the period at issue, which amounts are, by statute, the basis for determining sales tax owed. *See* Tex. Tax Code Ann. § 151.051 (West 2008) (imposing sales tax based on a percentage of sale price). To that extent, even if the affidavits were competent summary-judgment evidence, they do not raise a question of fact as to the correct amount of sales taxes owed. Accordingly, summary judgment in favor of the appellees was proper. We overrule Ayeni's first issue.

**Partial summary judgment**

■ In his third issue, Ayeni contends that the district court had no authority to grant a partial summary judgment because the Comptroller did not seek alternative or partial relief in its summary-judgment motion. But rule 166a explicitly permits a trial court to grant a partial summary judgment:

**Case not Fully Adjudicated on Motion.** If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel, ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

Tex.R. Civ. P. 166a(e). Here, the Comptroller sought summary judgment on two claims—a claim seeking delinquent sales taxes owed and a claim for attorney's fees—but the district court determined that the Comptroller met its summary-judgment burden only as to its claim for sales taxes owed and not as to its claim for attorney's fees. Accordingly, under rule 166a, it was appropriate for the district court to grant a partial summary judgment on the claim for sales tax owed and deny the Comptroller's motion as to attorney's fees. *See Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 100 (Tex.App.-Dallas 2009, pet. denied) ("If a case is not fully adjudicated on a motion for summary judgment, the trial court is authorized to render partial summary judgment, making 'an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just'") quoting Tex.R. Civ. P. 166a(e))).

Ayeni also suggests that the district court improperly granted partial summary judgment on no-evidence grounds. But there is nothing in the district court's order suggesting that the "partial" aspect of the summary judgment was a reference to

the traditional versus no-evidence standard, as opposed to the claims being addressed.

Accordingly, we overrule Ayeni's third issue on appeal.

## CONCLUSION

We affirm the district court's judgment.

Justice HENSON Not Participating.

Concurring Opinion by Justice PEMBERTON.

BOB PEMBERTON, Justice, concurring.

Although I join in the majority's opinion and judgment—I wrote them, after all—I write separately to offer some additional observations about Ayeni's second issue. While it was ultimately unnecessary for us to reach that issue here, it nonetheless warrants emphasis that Ayeni has identified an aberration in this Court's past jurisprudence addressing the effect of Comptroller certificates of deficiency and how a taxpayer can oppose a summary-judgment motion predicated on one.

The notion that a taxpayer must present conclusive contrary evidence to rebut a Comptroller's certificate of deficiency does not find explicit textual support in the current tax code. Subsection (a) of section 111.013 states only that the Comptroller's certificate is "prima facie evidence" of the taxes, penalties, and interest due, the delinquency of those amounts, and of the comptroller's compliance with the tax code.

*See* Tex. Tax Code Ann. § 111.013(a) (West 2008). "Prima facie" is Latin for "first view,"[1] and "prima facie evidence" typically denotes evidence that is determinative of a fact's or facts' existence, sometimes stated in terms of giving rise to a "presumption" of their existence, unless and until some contrary evidence is presented. *See Coward v. Gateway Nat'l Bank of Beaumont,* 525 S.W.2d 857, 859 (Tex.1975); *Dodson v. Watson,* 110 Tex. 355, 220 S.W. 771, 772 (1920) ("Prima facie evidence is merely that which suffices for the proof of a particular fact until contradicted and overcome by other evidence."); *Black's Law Dictionary* 638–39 (9th ed.2009) (defining "prima facie evidence" as "[e]vidence that will establish a fact or sustain a judgment unless contrary evidence is produced").[2] But nothing in section 111.013 purports to require *conclusive* contrary evidence to rebut or join issue with a Comptroller's certificate. *See* Tex. Tax Code Ann. § 111.013.

Appellees rely less on the tax code than on precedents of this Court, and I must concede they find some support there. As best I can tell, these decisions trace back to a 1967 no-writ case involving a trial on the merits of a tax-deficiency claim, *Smith v. State,* 418 S.W.2d 893 (Tex.Civ.App.-Austin 1967, no writ). *Smith,* in turn, purported to rely on the analysis in a 1942 Texas Supreme Court opinion, *Southland Life Insurance Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854 (1942).[3] *Southland Life* addressed the nature and appli-

---

1. *See Black's Law Dictionary* 1310 (9th ed.2009); *Webster's Third New Int'l Dictionary* 1800 (2002).

2. *See In re Allen,* 366 S.W.3d 696, 706 (Tex. 2012) ("We presume the Legislature is aware of relevant case law when it enacts or modifies statutes.") (citing *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990)); *HCBeck, Ltd. v. Rice,* 284 S.W.3d 349, 363 (Tex.2009) ("We use definitions prescribed by the Legislature and any technical or particu-

lar meaning the words have acquired ...." (citing Tex. Gov't Code Ann. § 311.011)).

3. *Southland Life Insurance Co. v. Greenwade,* 138 Tex. 450, 159 S.W.2d 854 (1942), was decided by the Texas Commission of Appeals. However, because the opinion was adopted by the Texas Supreme Court and, thus, has the full authority of a Texas Supreme Court decision, it was effectively decided by the Texas Supreme Court. *See National Bank of Commerce v. Williams,* 125 Tex. 619, 84

cation of the presumption of receipt afforded a properly stamped, addressed, and mailed letter in the context of a suit by a life-insurance beneficiary to recover policy proceeds. *See id.* at 858. The defendant insurance carrier asserted that the decedent's life-insurance policy had lapsed prior to the insured's death due to the insured's failure to make a premium payment that had come due. The case went to trial, at which the plaintiff beneficiary presented detailed evidence that the decedent had properly stamped, addressed, and mailed the premium payment to the insurance company prior to its final due date. This evidence gave rise to the legal presumption that the insurance company had received the payment. *See id.* at 857 ("It is settled in this state, however, that when a letter properly addressed and with postage prepaid is mailed, a presumption. of fact (rebuttable of course) arises that it was duly received by the addressee."). In response, the insurance company presented evidence that it had not received the premium payment. *Id.* The trial court rendered judgment in favor of the plaintiff beneficiary.

On appeal to the Waco Court of Civil Appeals, the insurance company asserted, among other points, that the evidence did not support a finding that the premium payment had been timely paid. *See Southland Life Ins. Co. v. Greenwade,* 143 S.W.2d 648, 650–51 (Tex.Civ.App.-Waco 1940), *reversed by* 159 S.W.2d at 858. Specifically, the insurance company argued that because it had produced evidence that it had never actually received the premium, both the presumption of receipt and the foundational evidence supporting that presumption—i.e., that the payment letter had been properly stamped, addressed, and mailed to the company—"disap-

peared" such that the trier of fact could no longer consider it; thus leaving the plaintiff without any proof of receipt. *See id.* at 650. The Waco court overruled that issue, holding that even in the face of evidence of non-receipt, the presumption of receipt "continued as evidence" that was sufficient to support the trial court's judgment. *See id.* at 650.

On appeal, although ultimately affirming the trial court's judgment and holding that the evidence was sufficient to support a finding that the premium check had been timely received, the supreme court explicitly rejected the Waco court's view that a presumption like that of receipt could itself be considered evidence. Instead, the supreme court held that a presumption is not evidence and that it disappears once "substantial contrary evidence" is offered by the party against whom the presumption operates. *See Southland Life,* 159 S.W.2d at 857 (citing Wigmore on Evidence, 2d ed., § 2491); *see also General Motors Corp. v. Saenz,* 873 S.W.2d 353, 359 (Tex. 1993) ("Once ... evidence contradicting the presumption has been offered, the presumption disappears."). But the court then went on to clarify that the evidence that gave rise to the presumption could still be considered and weighed by the fact-finder, vis-à-vis the carrier's contrary evidence, as evidence that the premium payment had, in fact, been timely received. *Southland Life,* 159 S.W.2d at 857; *see Saenz,* 873 S.W.2d at 359. In other words, although the insurance company had offered evidence that it had not timely received the payment, thus eliminating the ***presumption*** of receipt, the trier of fact could still consider the facts underlying the presumption-i.e., that the defendant stamped, addressed, and mailed the payment letter to the company-as themselves

---

S.W.2d 691, 692 (1935); *see also Cadle Co. v. Butler,* 951 S.W.2d 901, 911 (Tex.App.-Corpus Christi 1997, no pet.) (noting that Commis-

sion opinions adopted by the Texas Supreme Court are given the same force, weight, and effect as supreme court opinions).

evidence that the insurance company received the payment. *See Southland Life,* 159 S.W.2d at 857. And, relying on this evidence of payment, the supreme court went on to hold that the evidence was sufficient to support the trial court's finding that the payment was timely received. *See id.*

The court in *Southland Life* then went on to observe that there might be circumstances where the presumption's foundational facts *could not* be considered—i.e., would not support an affirmative finding—by the trier of fact:

> We hold that an inference established prima facie (as in the present case) is overcome, together with the evidentiary facts tending to establish it, only when the evidence tending to support the contrary inference is conclusive, or so clear, positive and disinterested that it would be unreasonable not to give effect to it as conclusive.... [P]rima facie evidence and presumptions of fact disappear when the true facts are *conclusively shown by other evidence.* ... In other words, presumptions, when controverted by facts, disappear, as such, and cannot be weighed *as evidence* against such facts.

*Id.* at 858 (internal citations omitted) (emphases in original). In other words, if the party against whom the presumption of receipt operates presents evidence that *conclusively* negates receipt of the mail, both the presumption of receipt and the probative value of any proof of underlying facts could be said to "disappear" because the evidence, by definition, is legally insufficient to support a finding of receipt. This amounts merely to an observation about the nature of conclusive evidence that negates a fact's existence. *See City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005) (discussing conclusive contrary evidence and noting that " '[n]o evidence points must, and may only, be sustained when the record discloses [that] the evidence establishes conclusively the opposite of the vital fact' " (quoting Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361 (1960)).

In *Smith,* this Court, citing *Southland Life,* described a taxpayer's burden in opposing the presumed correctness of a Comptroller's certificate of deficiency at trial as follows:

> With the prima facie presumption established that the State's claim for admissions taxes[4] against [the owner of a business on the taxpayer's property] was as shown in the Comptroller's certificate under Article 1.08[5], appellant [taxpayer] had the burden to overcome the inference with such evidence tending to support the contrary as would be conclusive, or evidence so clear and positive it would be unreasonable not to give effect to it as conclusive.

*Smith,* 418 S.W.2d at 896 (citing *Southland Life,* 159 S.W.2d at 858). This Court has continued to describe the taxpayer's burden at trial in similar terms.[6] To the

---

4. "Admissions taxes" are taxes paid "on fees for admission to all places of amusement." *See Smith v. State,* 418 S.W.2d 893, 895 (Tex. Civ.App.-Austin 1967, no writ).

5. Predecessor statute to section 111.013 of the Texas Tax Code.

6. *Accord Sundown Farms, Inc. v. State,* 89 S.W.3d 291, 293 (Tex.App.-Austin 2002, no pet.); *Penny v. State,* No. 03–97–00399–CV, 1998 WL 394173, at *2 (Tex.App.-Austin July 16, 1998, no pet.) (mem. op.); *State v. Glass,* 723 S.W.2d 325, 327 (Tex.App.-Austin 1987, writ ref'd n.r.e.); *Hylton v. State,* 665 S.W.2d 571, 572 (Tex.App.-Austin 1984, no writ); *Nu–Way Oil Co. v. Bullock,* 546 S.W.2d 336, 339 (Tex.Civ.App.-Austin 1976, no writ); *Baker v. Bullock,* 529 S.W.2d 279, 281 (Tex.Civ. App.-Austin 1975, writ ref'd n.r.e.); *State v. Gifford–Hill & Co.,* 428 S.W.2d 451, 457 (Tex.

extent such descriptions refer to the concepts that a Comptroller's certificate, even if met with the taxpayer's contrary evidence, may nonetheless be legally sufficient to support a fact finding of tax liability unless the taxpayer's contrary evidence is conclusive, it is merely an application of the principles described in *Southland Life*. In any event, Ayeni does not quarrel with the notion that he would be required, at least practically speaking, to present conclusive contrary evidence in order to overcome the effect of a Comptroller's certificate at trial on the merits. Otherwise, under the *Southland Life* analysis, the certificate would remain as legally sufficient evidence that could potentially support fact findings against the taxpayer.

But it is quite another thing, Ayeni urges, to hold that a nonmovant must present conclusive contrary evidence to preclude summary judgment based on a Comptroller's certificate, as appellees argue here. I agree.

The notion that a taxpayer nonmovant must counter a Comptroller's certificate with conclusive contrary evidence in order to preclude summary judgment traces back to a 2004 memorandum opinion of this Court, *Wimmer v. State*, No. 03–03–00135–CV, 2004 WL 210629, at *3–4 (Tex.App.-Austin Feb. 5, 2004, pet. denied) (mem. op.). In *Wimmer*, we held that a taxpayer "must *conclusively* establish that he owes no tax" to overcome a summary judgment predicated on a Comptroller's certificate of deficiency. *See id.* at *3. For support, this Court cited *Smith* and its progeny-again, cases that involved trials on the merits. *See id.* at *3–4 (citing *Sundown Farms*, 89 S.W.3d 291, 293 (Tex. App.-Austin 2002, no pet.); *Hylton v.*

*State*, 665 S.W.2d 571, 572 (Tex.App.-Austin 1984, no writ); *Smith*, 418 S.W.2d at 893). There was zero explanation or analysis of whether or how those concepts should properly be applied in the vastly different procedural context of summary judgment. *See Wimmer*, 2004 WL 210629 at *3–4.[7]

Contrary to the holdings of *Wimmer*, and any progeny, their analytical cornerstone in *Southland Life* would imply that the contrary evidence used to rebut the presumption, even if not conclusive, would raise a fact issue that would have to be resolved by the fact finder and not by summary judgment. *See Southland Life*, 159 S.W.2d at 857; *see also Balawajder v. Texas Dep't of Criminal Justice Inst. Div.*, 217 S.W.3d 20, 27 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) ("In the context of a summary judgment, the party against whom the presumption operates must produce evidence sufficient 'to neutralize the effect of the presumption' for the case to proceed to trial." quoting *Amaye v. Oravetz*, 57 S.W.3d 581, 584 (Tex.App.-Houston [14th Dist.] 2001, pet. denied)); *First Nat'l Bank of Libby, Montana v. Rector*, 710 S.W.2d 100, 103 (Tex.App.-Austin 1986, writ ref'd n.r.e.) (holding that where document created presumption of foreign judgment's validity, the party against whom the presumption operates must "produce some evidence at least raising an issue of material fact as to the validity" of the judgment to defeat summary judgment). And *Wimmer*, and any subsequent cases that might have followed it, are at odds with the summary-judgment burdens that the Texas Supreme Court has prescribed. Even if it is in some sense correct to state that a taxpayer must overcome a Comp-

Civ.App.-Austin 1968) *rev'd on other grounds by* 442 S.W.2d 320 (Tex.1969).

**7.** *See also Kawaja v. State*, No. 03–05–00491–CV, 2006 WL 1559343 (Tex.App.-Austin June

8, 2006, no pet.) (mem.op.) (also applying, without analysis, conclusive-evidence notion to summary-judgment proceeding) (citing *Glass*, 723 S.W.2d at 327; *Hylton*, 665 S.W.2d at 572).

troller's certificate with conclusive evidence at trial on the merits, the supreme court has made it clear that nonmovants do not face higher or different summary-judgment burdens based on the burdens of proof they may face at trial: "The failure of one party in a hearing upon a motion for summary judgment to discharge the burden which would rest on him at a trial on the merits is no ground for a summary judgment in favor of the other party." *Tigner v. First Nat'l Bank of Angleton,* 153 Tex. 69, 264 S.W.2d 85, 87 (1954). It has likewise made clear that a movant's summary-judgment burden does not depend on its burden of proof at trial: "The presumptions and burden of. proof for an ordinary or conventional trial are immaterial to the burden that a movant for summary judgment must bear." *Missouri–Kan.–Tex.R.R. Co. v. City of Dallas,* 623 S.W.2d 296, 298 (Tex.1981) (citing *Tigner,* 264 S.W.2d at 87). In fact, the supreme court held in *Missouri–Kansas–Texas Railroad* that the taxing authority, which enjoyed a number of presumptions in its favor, including that its property valuations were valid, must nevertheless " 'establish [its] entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of [its] cause of action or defense as a matter of law.' " *Id.* (quoting *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979)). Thus, even if the taxpayer's burden of proof at trial requires him to produce conclusive evidence to prevail on the merits, he must only produce evidence sufficient to raise a question of fact as to the taxing authority's claim in order to avoid summary judgment.

Nonetheless, because Ayeni has not presented competent contrary summary-judgment evidence that would even meet the customary burden of a summary-judgment nonmovant, this is not the case in which this Court should undertake to reexamine the suspect holdings of *Wimmer* and any progeny en banc.[8] But that case will come along inevitably, so I leave this writing as a place marker for that day. Alternatively, the Legislature could, of course, provide statutory clarification that would obviate the need for any such reexamination.

---

8. We may not overrule a prior panel opinion of this court absent an intervening change in the law by the Legislature or a higher court or by decision of this court sitting en banc. *See* Tex.R.App. P. 41.2 (providing that en banc consideration is appropriate to secure or maintain uniformity of appellate court decisions); *In re Smith,* 366 S.W.3d 282, 289 (Tex.App.-Dallas 2012, no pet.); *Nowzaradan v. Ryans,* 347 S.W.3d 734, 739 (Tex.App.-Houston [14th Dist.] 2011, no pet.).